UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIRSAD HAJRO,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS SULLIVAN ET AL.,<br><br>    Defendant. | Case No. 1:21-cv-00468-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Mirsad Hajro's Amended Complaint (Dkt. 17). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court finds Hajro has failed to remedy the Court's prior concerns and DISMISSES this case with prejudice.

## II. BACKGROUND

On December 2, 2021, Hajro filed his Complaint (Dkt. 2) and Application to Proceed in Forma Pauperis (Dkt. 1).

Broadly speaking, Hajro alleges in his Complaint that Thomas Sullivan, a sitting Canyon County Magistrate Judge, violated his rights and caused him injury because of his

biased rulings in state court custody proceedings. Dkt. 2. Hajro listed alleged violations of the Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh, Thirteenth, Fourteenth, and Sixteenth Amendments of the Constitution. Dkt. 10, at 3. He also alleged violations of Article 1 Section 9 Clause 8, Article 1 Section 10 Clause 1, and Article 6 paragraph 2 of the Constitution. *Id.* Finally, he alleged violations of his rights under 42 U.S.C. § 1983. Dkt. 2, at 1. He named a total of nineteen defendants in his Complaint, including Idaho Third District Judge Davis Vandervelde, several Idaho Supreme Court Justices, his former spouse, and numerous attorneys. Dkt. 12, at 3-6. He requested damages in the amount of $550 million from each defendant, totaling $10.45 billion. Dkt. 12, at 8-11. Hajro asserts he is fighting for custody of his minor children and that Judge Sullivan violated his constitutional rights in various hearings and through several rulings during the underlying case.

On May 5, 2022, the Court issued its Memorandum Decision and Order addressing Hajro's Application to Proceed in Forma Pauperis and Complaint. Dkt. 14. The Court granted Hajro's request to proceed in forma pauperis and allowed him to pay the filing fee over time. *Id.* However, the Court also found that Hajro's Complaint was subject to dismissal based upon failure to plead any factual details regarding the alleged violations. Dkt. 14, at 5-6. Further, the Court noted that Judge Sullivan was a sitting Judge and likely immune from suit. *Id.* at 6. Ultimately, the Court gave Hajro 30 days to remedy the Court's two concerns: judicial immunity, and the complaint's lack of factual details.

On July 15, 2022, Hajro dutifully filed a Second Amended Complaint (Dkt. 17).

## III. ANALYSIS

### a. Immunity

Hajro begins his Second Amended Complaint by addressing the Court's concerns regarding judicial immunity and makes broad statements that Judge Sullivan's rulings were unconstitutional and in violation of 42 U.S.C. § 1983. Dkt. 17, at 29 – 31 (and generally throughout). He then cites case law ranging from the 1800s to the 1990s regarding a judge's duty to adhere to the Constitution. *Id.* The Court understands Hajro's frustrations and appreciates the great effort he took in crafting his Complaint. The legal system is complex and endeavoring to navigate it *pro se* is a massive undertaking.

At face value, Hajro's complaint contains issues all arising from alleged violations of 42 U.S.C. § 1983, a federal statute, which sets forth civil liability for anyone who—acting under the color of state or federal law—deprives a person of their constitutional rights. While certain persons will be liable for their actions under § 1983, the statute makes clear there is an exception: "except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity*, injunctive relief shall not be granted* unless a declaratory decree was violated or declaratory relief was unavailable." (Emphasis added). Judges have long been accorded absolute immunity from actions for damages for their judicial acts. *See Wyatt v. Cole*, 112 S. Ct. 1827 (1992). The common law also recognizes several absolute immunities from suit under § 1983. Among these, state court judges have absolute immunity from suit for damages arising from their judicial acts unless they act in complete absence of jurisdiction. *See Mireles v. Waco*, 112 S. Ct. 286 (1991).

Hajro baldly asserts that Judge Sullivan "proceeded without jurisdiction" and thus violated his rights. Dkt. 17, at 29. Hajro argues that Judge Sullivan misconstrued evidence that he presented in the underlying child custody proceedings and/or wholly failed to take into consideration other evidence in support of his position. For example, he asserts that his children's mother declined to notify him in a timely manner of his children's COVID-19 vaccination appointments, and that this was not subsequently addressed by the court. Dkt. 17, at 53. In his Amended Complaint, Hajro asserts that Judge Sullivan acted outside of his jurisdiction by repeatedly violating Hajro's constitutional and civil rights, committing fraud on the court, "trespassing" on his rights, and other legal violations. *See generally*, Dkt. 17. Hajro concludes that he was declared a "vexatious litigant" by Judge Vandervelde and that this unfairly prejudiced him when pursuing custody of his children. Dkt. 17, at 67. The Court takes no position on this topic or Hajro's representations of what occurred in state court, but even taking his allegations at face value, there is no *showing* in the record that Judge Sullivan or Judge Vandervelde acted in *complete* absence of jurisdiction in any of their decisions.

The Court has reviewed Hajro's filings and while it is clear he is dissatisfied with Judge Sullivan's rulings, there is nothing to indicate the judge acted in complete absence of his jurisdiction. A judge who simply hands down rulings that one party disagrees with is not acting in absence of his authority. Hajro's myriad citations to caselaw do not contradict such a conclusion. The bottom line is this: adverse or unfavorable rulings do not give rise to claims of judicial misconduct. Hajro's disagreements with Judge Sullivan's factual findings or judicial rulings are not subject to review by this Court.

MEMORANDUM DECISION AND ORDER - 4

This brings the Court to its second concern: jurisdiction.

**b. Jurisdiction**

This Court is a court of limited jurisdiction and as such, can only hear cases and controversies that involve a federal question (28 U.S.C. § 1331) or satisfy federal diversity jurisdiction requirements (28 U.S.C. § 1332). The Court will have original jurisdiction "of all civil action arising under the Constitution, laws, or treaties of the United States." *Id*. Additionally, the Court will have supplemental jurisdiction "…over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367.

Hajro spends a great deal of time discussing jurisdiction when it comes to federal causes of action, constitutional depravations, and parental rights. Because Hajro couched this as a 42 U.S.C. § 1983 case (*see* Dkt. 2, at 4), alleging that Judge Sullivan deprived him of his rights, he asserts this Court has jurisdiction. To be sure, a federal court has jurisdiction over cases arising out of allegations that a person violated § 1983. However, the Court must still look at the underlying facts and allegations to ensure jurisdiction is proper.

Here, the facts all relate to Hajro's disagreements with Idaho state court family law proceedings. Under the long-standing *Younger* abstention doctrine, federal courts must abstain from hearing cases that would interfere with pending state court proceedings that implicate important state interests.[1] *Younger v. Harris*, 401 U.S. 37 (1971); *Potrero Hills*

---

[1] Although Hajro references final judgment, it appears there may be some ongoing elements, as shown by his May 2022 state court filings, which were filed well after the present federal claim. Dkt. 17, at 28.

MEMORANDUM DECISION AND ORDER - 5

*Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 881 (9th Cir. 2011). Family law issues—including child custody—are matters of Idaho state law and should be dealt with in that forum. As the Ninth Circuit has noted:

> The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.

*Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983).

Further, even where, as here, a federal question is presented, "federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (citations omitted). *See also Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) (finding that the case, "while raising constitutional issues, is at its core a child custody dispute. The state courts have already considered the merits of [the] claims. . . . The district court was aptly reluctant to put itself in the position of having to review the state courts' custody decision").

Now, lest Hajro feel that the Court is missing the substance of his Amended Complaint and argue that his claims are not really about the custody issue itself, but *how* Judge Sullivan reached his decision—i.e., that he did so in a way that violated Hajro's federal rights—the Court notes such would not change the outcome because the *Rooker-Feldman* doctrine would likewise bar any type of "appellate suit" in federal court.

A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that

the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). This rule of law is known as the *"Rooker–Feldman* doctrine."

As the United States Supreme Court has explained:

In *Rooker v. Fidelity Trust Co.*, the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it null and void. This Court noted preliminarily that the state court had acted within its jurisdiction. If the state-court decision was wrong, the Court explained that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was strictly original.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (cleaned up).

In short, the *Rooker–Feldman* doctrine "bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Doe v. Mann,* 415 F.3d 1038, 1041 (9th Cir. 2005) (cleaned up). The substantive nature of Hajro's case is not appropriate for federal court. Family law matters are state law matters and only in extremely rare circumstances would a federal court have jurisdiction. *See e.g., Foster v. Meriter Hosp.*, No. 07-C-464-C, 2007 WL 5582711, at *1 (W.D. Wis. Sept. 26, 2007) ("[T]he family law exception to federal jurisdiction applies even when a party is alleging a violation of federal law. Courts may not resolve child custody dispute questions regardless of the reason a party believes a custody decision is invalid, even if

MEMORANDUM DECISION AND ORDER - 7

there is an allegation of a constitutional violation.").

In this case, regardless of whether the Court views Hajro's claims as directly challenging the issue of custody, how Judge Sullivan reached his custody decision, or how those decisions affected Hajro, the outcome is the same: the Court lacks jurisdiction. Under the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine, the Court finds it does not have jurisdiction to adjudicate Hajro's claims. Idaho state court is the proper place for Hajro to litigate (or continue litigating) his grievances.

## IV. CONCLUSION

Plaintiffs cannot sue parties who are immune from suit without establishing some type of exception and the Court cannot adjudicate cases over which it does not have jurisdiction. Hajro has failed to remedy the Court's concerns regarding immunity and jurisdiction. Any disagreements with Judge Sullivan's legal conclusions cannot be adjudicated in this forum. The proper forum for Hajro's concerns is state court. He can appeal or take any action he deems proper there, but he cannot file a separate federal lawsuit under these circumstances. Accordingly, Hajro's case must be dismissed.

## V. ORDER

1. Hajro's Amended Complaint is DISMISSED WITH PREJUDICE and this case is CLOSED.

DATED: August 23, 2022

_____
David C. Nye
Chief U.S. District Court Judge